UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| PINNACLE TREATMENT CENTERS, INC., on behalf of itself and a class of all past, current and future patients who resided at 1741 East 106th Place in Crown Point, Indiana | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Cause No. _____ |
| CITY OF CROWN POINT, INDIANA, | ) ) | |
| Defendant. | ) ) | |

## VERIFIED COMPLAINT AND JURY DEMAND

For its Complaint and jury demand, Plaintiff Pinnacle Treatment Centers, Inc.

("Pinnacle"), Pinnacle shows the Court as follows.

## PARTIES

1.      Pinnacle is a Delaware company with its principal place of business in New

Jersey.

2.      Defendant the City of Crown Point (the "City") is an Indiana municipality located

in Lake County, Indiana.

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 because this complaint asserts claims arising under the laws of the United States.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the City is located

within this district and because a substantial part of the events giving rise to the claims asserted

in the complaint occurred in this district.

1

## FACTS APPLICABLE TO ALL CLAIMS

**The House**

5.     Pinnacle runs a nationwide network of treatment centers that help those suffering from the disease of substance use disorder recover from that disease.

6.     Pinnacle's services help remove barriers to recovery and transform individuals, families, and communities by aiding those suffering from the disease of substance use disorder.

7.     One aspect of its services is providing patients recovery housing to ensure a warm, caring, and safe home environment while patients are continuing their therapeutic treatment.

8.     Pinnacle leases property at 1741 East 106th Place in Crown Point, Indiana to serve as a recovery residence for patients undergoing treatment for substance use disorder (the "House").

9.     The House is owned by CapGrow Holdings JV Sub V LLC ("CapGrow")

10.     No outside visitors are allowed at the House.

11.     Pinnacle ensures there is staff onsite when patients are present.

12.     The Patients in the House must abide by a set of rules of conduct, which includes a curfew time after which they must be inside the House.

13.     Pinnacle maintains a zero tolerance policy for misconduct and will bar any patient from the House who engages in misconduct and violates the rules.

14.     Pinnacle's patients have lived in the House since early 2020, with no instances of misconduct during that time.

15.     No more than eight people live in the House at any time.

16.     As with any other home in its neighborhood, the patients have bedrooms as well as shared rooms for cooking, eating, watching television, and the like.

17.     The Patients cook, clean, recreate, and otherwise live their lives in the House just as anyone else in the surrounding neighborhood.

18.     Because they are undergoing treatment for the disease of substance use disorder, the Patients are disabled as that term is used in the federal Fair Housing Amendments Act ("FHAA").

19.     The House is located in the Waterside Crossing subdivision in Crown Point.

20.     This subdivision was built in the 2000s and homes in the neighborhood sell for more than $250,000 each.

21.     People with disabilities—including those recovering from the disease of substance use disorder —have a right to safe, healthy housing.

22.     Residing at this House presents a quiet setting ideal for those overcoming the disease of substance use disorder:





**The City's Discriminatory Conduct**

      23.     On May 26, 2020, the City issued a citation to Pinnacle claiming the patients' presence in the House violated a City zoning ordinance.

      24.     A true and accurate copy of the citation is attached hereto as **Exhibit A**.

      25.     The citation claims that the House is in violation of its Ordinance 150.19 (the "Ordinance").

      26.     The City contends this is because more than five unrelated individuals live in the House.

      27.     Pinnacle denies that it has violated this provision.

      28.     At that time it issued the citation, the City also claimed that the House was in violation of certain provisions in the City's building code.

      29.     Pinnacle responded to that point by immediately remedying the Property in order to ensure that it was compliant with the City's building code.

30.     Pinnacle also informed the City that it is protected by the FHAA and that enforcement of the Ordinance violates the FHAA.

31.     For instance, on June 7, 2020, Pinnacle provided to the City (via its counsel) information related to Pinnacle's services and protection.

32.     A true and accurate copy of this letter is attached as **Exhibit B**.

33.     Since at least May of 2020, the City has known that enforcement of the Ordinance would violate the FHAA.

34.     However, the City's attorneys have represented that the City was under significant pressure to remove Pinnacle's patients from the Property and that the City could not provide the reasonable accommodation required by the FHAA because of the animus against the disabled patients expressed by the City's constituency.

35.     The City—without notice to Pinnacle—also conducted a public meeting to hear comments from neighbors who complained that they did not wish to live next to the disabled individuals in the House.

36.     During that meeting, neighboring homeowners repeatedly disparaged the disabled individuals in the House and demanded that the City take action to remove the disabled individuals from their neighborhood.

37.     A newspaper reporter that attended the meeting described the tone of the neighbors as "angry" and reported that posts in the neighbor Facebook group contained "a lot of hateful language towards the people in recovery and making assumptions about them."

38.     That article also contained a quote from a neighbor described the attitude in Waterside Crossing as an "angry mob" out to remove the disabled individuals from the House.

39.     A true and accurate copy of the newspaper report is attached hereto as **Exhibit C**.

40.     The City's enforcement of the Ordinance would deny disabled individuals the same safe, bucolic life freely enjoyed by other Waterside Crossing residents.

41.     The City's enforcement would also ensure that Waterside Crossing is maintained as a neighborhood that excludes the disabled, like those living in the House.

42.     Despite the considerable opposition it faced, Pinnacle has attempted to work with the City to reach a reasonable compromise consistent with the rights granted by the FHAA.

43.     In response, the City has presented obstacle after obstacle. First, as previously discussed, the City claimed there were building code violations at the House.

44.     When Pinnacle quickly remedied those issues, the City switched tactics and claimed that the disabled patients' presence violated a restrictive covenant for the subdivision.

45.     On July 15, 2020, Pinnacle informed the City by letter that the City could not enforce the covenant without violating the FHAA.

46.     A true and accurate copy of this letter is attached hereto as **Exhibit D.**

47.     That letter apprised the City that its continued effort to evict the patients from the House was in violation of the FHAA and that Pinnacle would enforce its rights under the FHAA, including by seeking injunctive relief, damages, punitive damages, and attorneys' fees.

48.     Despite this, Pinnacle continued to offer to work with the City to find a reasonable resolution to the dispute.

49.     After being told the covenant was unenforceable against the disabled patients in the House, the City again switched tactics and demanded that Pinnacle and CapGrow submit a variance request asking that the disabled individuals be allowed to continue to live at the House.

50.     In order to ensure that its federal rights would be preserved in the event it sought this variance, Pinnacle asked the City to provide a waiver of any claim that the submission of the variance prejudiced its right to sue under the FHAA.

51.     The City finally complied with this request in a letter dated August 27, 2020 that stated that:

> On behalf of the City of Crown Point, the Crown Point Board of Zoning Appeals and all related departments, commissions and boards (collectively, the "City"), the City agrees that it shall make no argument in any legal proceeding that the submission of a use variance petition for 1741 E. 106th Place, Crown Point, Indiana (the "Property"), prejudices or waives any right of Pinnacle or any other party for purposes of any litigation concerning the Property, including the right to argue that the use of the Property complies with the City's zoning ordinances or restrictive covenants.

52.     A true and accurate copy of that letter is attached as **Exhibit E.**

53.     Having finally received this assurance, Pinnacle filed the variance request on August 28, 2020.

54.     The variance request was accompanied by a request for reasonable accommodation under the FHAA.  That request asked the City not to: "(1) enforce Section 150.19 or any other City code provision that requires residents at the Property to be members of the same family so long as individuals meeting the definition of 'disabled' under the federal Fair Housing Amendments Act ('FHAA') reside at the Property; and (2) enforce the City's zoning code or other ordinances to prevent residents undergoing treatment for the disease of substance use disorder or otherwise 'disabled' under the FHAA from living at the Property."

55.     A true and accurate copy of this letter is attached as **Exhibit F.**

56.     The City has never granted the reasonable accommodation requested in this letter.

57.     Instead, on August 31, 2020, the City demanded yet more from Pinnacle and demanded that Pinnacle provide: (1) a site plan or survey for the site; (2) photographs of the site and neighboring property; and (3) the payment of a $100 filing fee.

58.     The City unilaterally demanded that these be done within 24 hours of the City's demand.

59.     The City indicated that it demanded the expedited treatment because it wanted to subject Pinnacle to a special meeting on the variance and could not wait until its regularly scheduled board of zoning appeals meeting set for later this month.

60.     A true and accurate copy of the email making these demands is attached hereto as **Exhibit G.**

61.     Pinnacle promptly provided the requested photographs and the filing fee.

62.     Neither Pinnacle nor CapGrow have a site plan for the House because they do not intend any structural changes to the house.

63.     Neither Pinnacle nor CapGrow have a survey of the House.

64.     Neither site plans nor surveys are typically required for use variances in Crown Point or elsewhere in Indiana, yet the City required one for the House.

65.     Pinnacle informed the City that it disagreed that a survey was necessary to determine a reasonable accommodation under the FHAA and that it would need time to obtain the demanded survey, which was first raised in the correspondence of August 31, 2020.

66.     After investigating the matter with various local surveyors, Pinnacle determined that the soonest it could obtain a survey is approximately three weeks.

67.     However, the City decided instead to sue Pinnacle on September 1, 2020 in the Lake Superior Court under Cause No. 45C01-2009-PL-000567.

68.     The City's suit seeks to compel disabled individuals to move out of the House despite the fact they have nowhere else to go while they receive treatment for the disease of substance use disorder and that they face the rigors of a global pandemic.

69.     Because Pinnacle leases the House for the purpose of providing a safe, clean, healthy place for disabled patients to live, Pinnacle is aggrieved, adversely affected, and injured by the City's enforcement of the Ordinance and because it will continue to be injured by the City's discriminatory housing practices. *See* 42 U.S.C. § 3613(a) & 42 U.S.C. § 3602(j).

70.     Given the totality of its conduct alleged in this complaint, the City's demand for a variance proposal was a mere pretext to its true intent of forcing the disabled residents out of the House.

**Associational Standing**

71.     In addition to its own rights, Pinnacle brings this suit in an associational capacity on behalf the residents of the House.

72.     Those members have standing in their own right to bring suit because they are subject to the same discriminatory misconduct faced by Pinnacle.

73.     The interest of its members are germane to Pinnacle's purpose, as it provides treatment services to those who live in the House, the very reason for which they face discrimination from the City.

74.     The participation of the individual patients is not necessary given that the pertinent facts of the case concern the City's misconduct and not the actions of any of the individual patients.

75.     Participation of the patients creates unnecessary burdens on individuals undergoing treatment for the disease of substance use disorder and who have significant privacy interests in regard to the matters at issue.

**Class Allegations**

76.     Pinnacle seeks a certification of a class of all former, current, and future residents of the House who would be subject to City's discriminatory treatment.

77.     That class is sufficiently numerous so that joining all of the members of the class is impracticable and would result in an inefficient use of judicial resources and prejudice the individual members of the class in light of their privacy interests. In addition, more members may join the class as the matter proceeds.

78.     There are questions of law or fact common to the class, as all have been subject to the same discriminatory misconduct by the City.

79.     The claims asserted by Pinnacle are not only typical of the claims of the class members, but virtually identical to them.

80.     Pinnacle will fairly and adequately protect the interests of the class.

81.     Pinnacle seeks class certification under Fed R. Civ. Pro. 23(b)(1) because (1) prosecuting separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; (2) adjudications with respect to individual class members, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; and (3) the party opposing the class has

acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

82.     Questions of law and fact common to class members predominate over any questions affecting only individual members because the City's discriminatory conduct applies to Pinnacle and the class members and the same facts and law apply to their claims.

83.     A class action is superior to other available methods for fairly and efficiently adjudicating the controversy because of the economy in having all claims heard in a single matter where the dispute concerns common interests and facts and would protect the privacy interests of the class members.

## Count I – Violation of the FHAA

84.     Pinnacle incorporates paragraphs 1 through 83 as if fully stated herein.

85.     The patients residing in the House are disabled as defined by the FHAA.

86.     The City has violated the FHAA by failing to provide a reasonable accommodation to these disabled individuals that live in the House leased by Pinnacle for purposes of the care those disabled individuals receive from Pinnacle.

87.     That reasonable accommodation includes: (1) not enforcing the Ordinance or any other City code provision that requires residents at the House to be members of the same family so long as individuals meeting the definition of disabled under the FHAA reside at the Property; and (2) not enforcing the City's zoning code or other ordinances to prevent residents undergoing treatment for the disease of substance use disorder or otherwise disabled under the FHAA from living at the Property.

88.     The City has violated the FHAA by purposefully discriminating against the disabled persons that live at the House.

89.     The City's violation of the FHAA is willful and wanton because it has continued to purposefully violate the FHAA in order to satisfy the "angry mob" that wants to prevent disabled individuals from living in the bucolic Waterside Crossing setting.

## COUNT II – Preliminary and Permanent Injunction

90.     Pinnacle incorporates Paragraphs 1 through 89 as if fully stated herein.

91.     Pinnacle faces irreparable injury because of the City's enforcement of the Ordinance and discrimination against disabled individuals.

92.     Pinnacle has no remedy for these injuries.

93.     The balance of harms favors entering a preliminary injunction against the City's unlawful discrimination against Pinnacle and the disabled residents of the House.

94.     Public policy favors entering the injunction because of the public policy against discrimination under the FHAA.

95.     The Court should preliminarily and permanently enjoin the City from violating the FHAA.

WHEREFORE, Pinnacle respectfully requests that the Court enter judgment in its favor, find that the City has violated the FHAA, award the Plaintiff its compensatory damages, award punitive damages against the City, enter an injunction preliminarily and permanently enjoining the City from enforcing the Ordinance against Pinnacle, award Pinnacle its costs and attorneys' fees, and award all other just and appropriate relief.

## JURY DEMAND

Pinnacle demands a jury on all claims so triable.

Respectfully submitted,


*/s/* Mark J. Crandley
Mark J. Crandley, Atty. No. 22321-53
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN 46204-3535
317-236-1313
Fax 317-232-7433
mark.crandley@btlaw.com

## VERIFICATION

I, *Thaiphong Vo*, hereby verify under the penalties for perjury that the facts stated in this complaint are true and correct.

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

---

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                    )
County of _Los Angeles_                          )

On _September 17, 2020_ before me, _Victoria D. Riebe, Notary Public_ ,
     Date                                             *Here Insert Name and Title of the Officer*

personally appeared _THAIPHONG VO_
                                       *Name(s) of Signer(s)*

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Victoria D. Riebe_
                        *Signature of Notary Public*

VICTORIA D. RIEBE
Notary Public - California
Los Angeles County
Commission # 2238606
My Comm. Expires May 11, 2022

*Place Notary Seal Above*

──────────────── **OPTIONAL** ────────────────

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document** _Pinnacle V. City of Crown Point, IN_
Title or Type of Document: _Complaint and Jury Demand_  Document Date: _Sept. 17, 2020_
Number of Pages: _____ Signer(s) Other Than Named Above: _No other Signer_

**Capacity(ies) Claimed by Signer(s)**
Signer's Name: _THAIPHONG VO_
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

Signer's Name: _____
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Individual     ☐ Attorney in Fact
☐ Trustee     ☐ Guardian or Conservator
☐ Other: _____
Signer Is Representing: _____

---

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

**Crown Point Police Department**

**124 N. East Street**

**Crown Point, IN 46307**

**(219)-663-2131**

**NOTICE OF ORDINANCE VIOLATION(S):**

**INCIDENT #: 20CP06616**

**TIME: 11:00 AM**

**DATE: May 18, 2020**

**RESPONSIBLE OFFICER: Sheryl L. Laney #10**

**FULL NAME: CapGrow Holdings JV Sub V LLC.**

**ADDRESS: 320 W. Ohio Street Suite 650**

**CITY:Chicago, IL                    ZIP: 60654**

**PHONE:**

**TYPE OF CALL: R-I Residential zoning district does not permit multi-family dwellings or use.**

**ORDINANCE #: 150.19**

**DATE OF FOLLOW UP: May 26, 2020**

**DESCRIPTION OF VIOLATION(S):**

The property you own or control located at 1741 E. 106th Place, Crown Point, Indiana is in violation of city ordinance.

Immediate action is required to avoid citation(s). You have 7 days to comply with the city ordinance.

**EXHIBIT A**

1

**Crandley, Mark**

---

| | |
|---|---|
| **From:** | Crandley, Mark |
| **Sent:** | Sunday, June 7, 2020 3:13 PM |
| **To:** | 'alex@kutanovskilaw.com'; Joe Irak (joeirak@yahoo.com) |
| **Cc:** | Loftus, Joseph |
| **Subject:** | Pinnacle Treatment |
| **Attachments:** | City of Edmonds v Oxford House Inc (2).pdf; Daveri Development Group LLC v Village of Wheeling.pdf; Foote - FHAA  Group Homes for the Handicapped (2).pdf; Oconomowoc Residential Programs v City of Milwaukee.pdf; Oxford House Inc v Browning.pdf; Oxford House Inc v City of Albany.pdf; US v City of Chicago Heights.pdf; Valencia v City of Springfield Illinois.pdf; Recovery Works Merrillville Brief Overview.pptx |

Joe and Alex:

Thank you again for the productive discussion this week. Following up on that talk, enclosed please find some of the authorities we discussed.

As I mentioned, the United States Supreme Court applied the FHAA to a group home for those recovering from substance addictions when a city sought to enforce a single-family zoning rule against it. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995).  The Court in *Oxford House* concluded that a single-family zoning rule must be reviewed under the FHAA provisions making it unlawful to "refus[e] to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [disabled] person[s] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). That is now the governing standard in reviewing whether a single-family rule can apply to a home for those recovering from substantive addictions.

The Oxford House entity that obtained the favorable result in the Supreme Court has since successfully litigated the issue in district courts around the country. I enclose two examples.

The Seventh Circuit and district courts within the circuit have also applied this standard under the FHAA to require accommodation.  For instance, the Seventh Circuit found an unreasonable failure to accommodate the location of group homes in a residential area even where the zoning ordinance **allowed** them but required them to be 2,500 feet from one another. *See Oconomowoc Residential Programs v. City of Milwaukee*.  If the 2,500 foot requirement failed under the FHAA, a total ban in a single-family district would be even more problematic. As the Seventh Circuit explained in the *Oconomowoc* case: "In this context, 'equal opportunity' means the opportunity to choose to live in a residential neighborhood.  The FHAA 'prohibits local governments from applying land use regulations in a manner that will ... give disabled people less opportunity to live in certain neighborhoods than people without disabilities.' Often, a community-based residential facility provides the only means by which disabled persons can live in a residential neighborhood, either because they need more supportive services, for financial reasons, or both. When a zoning authority refuses to reasonably accommodate these small group living facilities, it denies disabled persons an equal opportunity to live in the community of their choice." *Id*. (citations omitted). In addition, the court in *U.S. v. City of Chicago Heights* also concluded that community opposition could be used as evidence of direct discrimination as well.  I also include other cases from within the Seventh Circuit coming to similar results.

I also enclose an article that provides guidance on the FHAA in the context of local zoning.

Finally, I enclose a PowerPoint prepared by Pinnacle that gives an overview about Pinnacle and what it does.

**EXHIBIT B**

We are happy to answer additional questions you might have.

Best,


**Mark Crandley** | Partner
Barnes & Thornburg LLP
11 South Meridian Street, Indianapolis, IN 46204-3535
Direct: (317) 261-7924 | Mobile: (317) 258-4060 | Fax: (317) 231-7433



Atlanta | California | Chicago | Delaware | Indiana | Michigan | Minneapolis
Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

/8/2020      Halfway house amid Crown P int family h mes angers residents, prompts city lawsuit | Latest Headlines | nwitimes.com

USDC IN/ND case 2:20-cv-00336-PPS-JPK    document 1    filed 09/18/20    page 20 of 42

https://www.nwitimes.com/news/halfway-house-amid-crown-point-family-homes-angers-residents-prompts-city-lawsuit/article_3f3eb707-5ca0-5949-96e1-ab986d74d4ab.html

URGENT

# Halfway house amid Crown Point family homes angers residents, prompts city lawsuit

Mary Freda

Sep 2, 2020

ACT NOW! Subscribe $5 for 5 mo.

**EXHIBIT C**



CROWN POINT — When Dan Bajda noticed he was getting new neighbors in Waterside Crossing, a subdivision filled with quarter-million-dollar homes off 109th Avenue in Crown Point, he says he didn't fully grasp what was happening.

He didn't expect the home, nestled amid single-family residences, would be used as a drug treatment halfway house.

According to Bajda, other residents in the subdivision and some city officials, the home on 106th Place is being used to house eight to 10 people for that purpose.

Now, the city is looking to regulate the home that moved into the neighborhood without notice, according to a lawsuit filed Tuesday evening.

The filing comes after city officials say they attempted, through Crown Point's municipal legal department, to work with the owner of the single-family home, CapGrow Partners, and its apparent lessee, Pinnacle Treatment Centers.

"The city has been very, very patient on this. We were hoping that the petitioner would get on the docket to go through the administrative process," Crown Point Mayor David Uran told The Times Wednesday.

"I know that our residents, they would want that as well. They want to be able to provide their insight on what their neighborhood, to them, should look like and what their concerns would be and questions."

The city is seeking a permanent court injunction, as well as a judgment, that would require CapGrow and Pinnacle Treatment Centers to comply with the city's zoning code.

The city also is seeking damages in an unspecified amount, saying it "has been damaged, and continues to be damaged" by zoning code violations made by CapGrow and Pinnacle Treatment Centers, according to the lawsuit.

"Defendants' violations of the zoning code also are offensive to the senses and interfere with the comfortable enjoyment of life or property, and therefore constitute a nuisance under Indiana Code Section 32-30-6-6," the lawsuit states.

**Recovery center**

Over the past several months, the city has tried to work with CapGrow and Pinnacle Treatment Centers, encouraging both to file a petition for a use variance for the property, which is zoned R-1, the lawsuit states.

According to the city's zoning code, **section 150.14**, an R-1 district is for residential use. Under the zoning code, only dwellings that "would not detract from the residential character of the neighborhood" are permitted.

However, both CapGrow and Pinnacle Treatment Centers "failed to abide by the city's deadline to file the petition, and once filed, the petition did not meet all of the requirements for a complete and proper petition," the lawsuit alleges.

By failing to file the proper petitions, residents have not been given the proper opportunity to voice concerns about the issue, Uran said.

9/8/2020     Halfway house amid Crown Point family homes angers residents, prompts city lawsuit | Latest Headlines | nwitimes.com

USDC IN/ND case 2:20-cv-00336-PPS-JPK    document 1    filed 09/18/20    page 24 of 42

**According to its website**, CapGrow purchases existing homes, as well as new, custom-built homes, to provide "safe, secure and appropriate housing for individuals with behavioral health needs."

The company then leases the homes to partners "at an affordable rate and for a length of time that meets their operational needs," according to the site.

Lake County records indicate CapGrow bought the Waterside Crossing home Feb. 25.

CapGrow officials declined to be interviewed by The Times.

**According to its website**, Pinnacle Treatment Centers is "one of the nation's leading providers of quality treatment for alcohol and substance use disorders."

Pinnacle Treatment Centers officials also have declined to answer various questions posed by The Times.

### New neighbors

The proximity of the home to otherwise single-family residences is stirring controversy among Waterside Crossing residents.

More than 100 residents from the subdivision attended an Aug. 18 meeting at a park in Waterside to discuss the matter with city officials.

Many posed questions to those officials, including Mayor Uran; District 1 Councilman Chad Jeffries; Chief of Staff Greg Falkowski; Planning Administrator Anthony Schlueter; and Assistant City Attorney Alex Kutanovski.

What laws protect us? What steps can be taken to prevent this from happening again? Is there a Pinnacle representative on the premises at all times making sure rules are followed?

Those were all among the questions.

Uran, who stood in the middle of the group, repeatedly told residents he couldn't supply answers he didn't have.

"I'm very transparent and upfront," Uran said at one point. "I don't have an answer for you for it."

Uran said during the meeting the home had been inspected by the city's building inspector, who found no violations.

9/8/2020      Halfway house amid Crown Point family homes angers residents, prompts city lawsuit | Latest Headlines | nwitimes.com

USDC IN/ND case 2:20-cv-00336-PPS-JPK document 1 filed 09/18/20 page 26 of 42

"We didn't allow anybody to come in here. I didn't sign off and say, 'Take that house right here in Waterside; you'll love it, great neighbors.' OK? That's not the case," Uran told the gathering.

"Understand that we're going to do everything that we can do as a city to make sure anybody who wants to do business or wants to live in Crown Point has a quality of life."

Many of the questions remain unanswered, as both Pinnacle and CapGrow have yet to file a complete petition with the city and have declined to comment.

## Regulation?

Bajda said he's concerned the home will continue to go unregulated, fearing it may be protected under two federal acts. Some city officials have shared in that concern.

Under the **Fair Housing Act**, people cannot be discriminated against when renting or buying a home, seeking a mortgage, seeking housing assistance or "engaging in other housing-related activities."

9/8/2020                  Halfway house amid Crown Point family homes angers residents, prompts city lawsuit | Latest Headlines | nwitimes.com

USDC IN/ND case 2:20-cv-00336-PPS-JPK   document 1   filed 09/18/20   page 27 of 42

The act prohibits discrimination because of "race, color, national origin, religion, sex, familial status or disability."

Under the **Americans with Disabilities Act**, drug addiction and alcoholism are considered disabilities.

Bajda, a retired Lake County Sheriff's Department officer who served the department for 23 years, told The Times men and women have been in and out of the home since March.

Bajda said the unregulated "revolving door" of people is concerning.

"We have 27 kids on our block, and both ends of the block are bus stops," said Bajda, noting he has a 6-year-old daughter. "I'm not against recovery or anything like that, but there's a place for it. And it's not in a single-family subdivision."

He later added: "It's really nerve-racking. Even if they were there for a year, or even six months — where you actually get to know them — it'll be a little less of a burden on me."

Not everyone in the neighborhood, however, is against the home. Savannah Moore, who moved to Waterside Crossing more than a year ago, said she understands why people are concerned.

But she expressed kindness to those living in the home.

Moore said some social media conversations regarding the home in the subdivision's Facebook group had "a lot of hateful language towards the people in recovery and making assumptions about them."

"That could be just as true of any other neighbor. We don't know what other things people are struggling with or dealing with in our neighborhood because their lives aren't put on public display like these people's now are," said Moore, who has two daughters.

She later added: "Even if maybe this isn't the best place for a halfway house — I'm not the best judge of that — but at least affording the kindness and the proper route of going about things, rather than stirring up the angry mob against a house and posting pictures of them and all that kind of stuff."

## Benefits of sober living

John Adams, director of a **supportive living program at Fairbanks Treatment and Recovery Center** based in Indianapolis, told The Times sober living homes offer a buffer between a low point and getting back to normal.

Fairbanks offers accredited recovery programs, **according to the National Association of Addiction Treatment Providers**.

Adams, who has been in recovery for nearly a decade, said not everyone needs a supportive living program. The program, however, provides accountability and structure, he said.

"We push them (those in recovery) to limits that they may not otherwise achieve on their own, going back to where they're from," Adams said. "We have job requirements. We have service work requirements; you have to get involved in volunteering. ... These

aren't choices.

Residents in the Fairbanks supportive living program live in an apartment, abide by a curfew, have to attend five 12-step meetings a week and consent to random drug and alcohol screenings.

"What we do is we don't judge, and we give people the opportunity to get back to — not even get back to — but become the man or woman that they were supposed to be," Adams said.

## Gallery: Recent arrests booked into Lake County Jail

**Adam Makowski**

**BARNES & THORNBURG**LLP

11 S. Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

www.btlaw.com

Mark J. Crandley
(317) 261-7924
mark.crandley@btlaw.com

July 15, 2020

**_VIA ELECTRONIC MAIL_**

Joseph S. Irak
Attorney at Law
9219 Broadway
Merrillville, Indiana 46410

      Re:    Waterside Neighborhood Association

Dear Joe:

      I write in response to your email of July 9, 2020 indicating the City of Crown Point's intent to enforce a covenant on behalf of the Waterside Crossing Property Owners Association (the "HOA") against my client Pinnacle Treatment Centers, Inc. ("Pinnacle"). I note that your email did not provide a copy of the covenant. We continue to review whether this provision is in the chain of title for the property and whether the language you quote applies to the residents living in the property.

      However, we wish to apprise the City that its threatened litigation violates the Fair Housing Amendments Act ("FHAA"). As I previously informed you, the United States Supreme Court applied the FHAA to a group home for those recovering from substance addictions when a city sought to enforce a single-family zoning rule against it. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995). The Court in *Oxford House* concluded that a city violated the FHAA when it "refus[ed] to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [disabled] person[s] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). That is the governing standard in reviewing whether a single-family rule can apply to a home for those recovering from substantive addictions. As I have already informed you, the Seventh Circuit and district courts within the circuit have also applied this standard under the FHAA to require accommodation for housing like Pinnacle's. *See Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775 (7th Cir. 2002).

Atlanta  California  Chicago  Delaware  Indiana  Michigan  Minneapolis  New York  Ohio  Raleigh  Salt Lake City  Texas  Washington, D.C.

**EXHIBIT D**

Joseph S. Irak
July 15, 2020
Page 2

That the City now wants to wrap this discriminatory practice within a private covenant changes nothing. The FHAA prevents discrimination in housing, including by private persons. 42 U.C.S. § § 3604(f)(2). This includes discrimination on the conditions on the sale, rental, or use of homes by private owners. *Id.* The legislative history of this provision shows that it "is intended to prohibit restrictive covenants ... which have the effect of excluding, for example, congregate living arrangements for persons with handicaps." House Report No. 100–711, 100th Cong., 2d Sess. 24. *See also id.* at 24 ("The Act is intended to prohibit the application of special requirements through land-use regulations, **restrictive covenants**, and conditional or special use permits that have the effect of limiting the ability of such individuals to live in the residence of their choice in the community.") (emphasis added).

The FHAA therefore prevents the use of restrictive covenants that discriminate against disabled individuals and requires covenants to apply the same type of reasonable accommodation required for local government zoning rules. *Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Association Inc.*, 192 F. Supp. 2d 1344 (M.D. Fla. 2002) ("In the instant case, the Court finds that Defendant did not reasonably accommodate Plaintiffs, in violation of the FHAA, when it failed to waive the enforcement of its deed restrictions contained in the Declarations. . . . The Court finds that Defendant is in violation of the Fair Housing Act, as amended in 1988, 42 U.S.C. § 3604(f) and Defendant is enjoined from attempting to enforce the deed restriction in question from operating."); *Martin v. Constance*, 843 F. Supp. 1321, 1326 (E.D. Mo. 1994) ("A reasonable accommodation would have been not to seek enforcement of the covenant. Such an accommodation would not impose an undue financial or administrative burden on the private defendants, nor would it undermine the basic purpose behind the practice of enforcement, namely, to maintain the residential nature of the neighborhood."); *U.S. v. Scott*, 788 F. Supp. 1555 (D. Kan. 1992).

The FHAA prohibits actions that "'give disabled people less opportunity to live in certain neighborhoods than people without disabilities.' Often, a community-based residential facility provides the only means by which disabled persons can live in a residential neighborhood, either because they need more supportive services, for financial reasons, or both." *Oconomowoc,* 300 F.3d at 784. Failing to accommodate such a facility is a blatant and intentional violation of the FHAA regardless of whether it arises under a zoning ordinance or a restrictive covenant. *Id.*

I note as well that the fact that the City is choosing to step into the shoes of the HOA because local residents desire to deny housing to disabled residents. Far from a legitimate exercise of government power, courts treat this type of purposeful activity as evidence of discrimination under the FHAA. *See U.S. v. City of Chicago Heights,* U.S. v. City of Chicago Heights, 161 F. Supp. 2d 819 (N.D. Ill. 2001).

**BARNES & THORNBURG** LLP
17711024

Joseph S. Irak
July 15, 2020
Page 3

As you know, Pinnacle has been working with the City to address issues the City has raised. This latest argument comes out-of-the-blue as Pinnacle continued these efforts and raises serious concerns about the City's willingness to work with Pinnacle in good faith. In any event, Pinnacle stands ready to defend its rights and the rights of its residents in the light of this renewed threat from the City. If the City continues to take this position, Pinnacle will have no choice but to assert its rights under the FHAA, including its right to actual and punitive damages against both the City and the HOA as well as its right to recover its attorneys' fees. 42 U.S.C.A. § 3613 ("In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages . . . ."); *id.* ("In a civil action under subsection (a), the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs.").

Litigation is not Pinnacle's preferred option. Pinnacle remains committed to working with the City. However, given this latest threat, Pinnacle is compelled to put the City on notice of the ramifications of the path the City appears intent on pursuing.

Sincerely,

Mark J. Crandley

**BARNES & THORNBURG** LLP

# IceMiller

**LEGAL COUNSEL**

One American Square | Suite 2900 | Indianapolis, IN 46282-0200

Chicago    Cleveland    Columbus    DuPage County, Ill.
Indianapolis    New York    Philadelphia    Washington, D.C.

August 27, 2020

WRITER'S DIRECT NUMBER: (317) 236-5952
DIRECT FAX: (317) 592-4720
EMAIL: Timothy.Ochs@icemiller.com

*Via e-mail*

Mr. Mark Crandley, Partner
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, IN  46204-3535
e-mail address:  Mark.Crandley@btlaw.com

RE:    *Pinnacle Treatment Centers, Inc. ("Pinnacle")*

Dear Mark:

On behalf of the City of Crown Point, the Crown Point Board of Zoning Appeals and all related departments, commissions and boards (collectively, the "City"), the City agrees that it shall make no argument in any legal proceeding that the submission of a use variance petition for 1741 E. 106th Place, Crown Point, Indiana (the "Property"), prejudices or waives any right of Pinnacle or any other party for purposes of any litigation concerning the Property, including the right to argue that the use of the Property complies with the City's zoning ordinances or restrictive covenants.

If you have any questions or wish to discuss this letter, please do not hesitate to contact me.

Sincerely,

ICE MILLER LLP

**EXHIBIT E**

Timothy E. Ochs

TEO/dlp

**Exhibit 2**

cc:  Jason McNiel (via e-mail: Jason.McNiel@icemiller.com)
       Alex Kutanvski (via e-mail: alex@kutanovskilaw.com)

Ice Miller LLP

icemiller.com

I\15627041.1

# BARNES & THORNBURG LLP

11 S. Meridian Street
Indianapolis, IN 46204-3535 U.S.A.
(317) 236-1313
Fax (317) 231-7433

www.btlaw.com

Mark J. Crandley
(317) 261-7924
mark.crandley@btlaw.com

August 28, 2020

***VIA ELECTRONIC MAIL***
Jason McNiel
Timothy Ochs
IceMiller
One American Square, Suite 2900
Indianapolis, Indiana 46282-0200

Re:     Variance for 1741 East 106th Place, Crown Point, Indiana 60654

Dear Counsel:

I submit this letter stating the basis for our request for a variance for property managed by Pinnacle Treatment Centers, Inc. ("Pinnacle").  As you are aware, Pinnacle currently manages property at 1741 East 106th Place, Crown Point, Indiana, 60654 ("Property").  The residents of the Property are individuals recovering from substance abuse. The City of Crown Point ("City") has indicated that it intends to enforce the City's zoning code to render these individuals homeless during their ongoing treatment (and during a global pandemic.) The City's stated justification for this position is that City Ordinance 150.19 ("Section 150.19") prevents the residents from living under one roof because they are not a single family.  *See* May 18, 2020 Notice of Violation.  Please note that Pinnacle disagrees that Section 150.19 actually prevents Pinnacle's residents from living at the Property. That section identifies the special uses in R1 districts to include "home occupations."  The individuals residing at the Property are occupying their home and satisfy this special use condition.

In any event, Pinnacle requests a variance to put to rest any dispute about the right of residents to continue to live at the Property. The requested variance would be that the City may not: (1) enforce Section 150.19 or any other City code provision that requires residents at the Property to be members of the same family so long as individuals meeting the definition of "disabled" under the federal Fair Housing Amendments Act ("FHAA") reside at the Property; and (2) enforce the City's zoning code or other ordinances to prevent residents undergoing treatment for substance abuse or otherwise "disabled" under the FHAA from living at the Property.

The FHAA prevents the City from enforcing Section 159.19. As we have previously discussed, the United States Supreme Court applied the FHAA to a group home for those recovering from substance addictions when a city sought to enforce a single-family zoning rule against it. *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725 (1995).  The Court in *Oxford House* concluded that a city violated the FHAA when it "refus[ed] to make reasonable accommodations in rules, policies, practices or services, when such accommodations may be necessary to afford [disabled] person[s] equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). That is the governing standard in reviewing whether a single-family rule can apply to a home for those recovering from substantive addictions.

**EXHIBIT F**

Atlanta   California   Chicago   Delaware   Indiana   Michigan   Minneapolis   New York   Ohio   Raleigh   Salt Lake City   Texas   Washington, D.C.

August 27, 2020
Page 2

The Seventh Circuit and district courts within the circuit have also applied this standard under the FHAA to require accommodation for housing like Pinnacle's. *See Oconomowoc Residential Programs v. City of Milwaukee,* 300 F.3d 775 (7th Cir. 2002). The FHAA prohibits actions that "'give disabled people less opportunity to live in certain neighborhoods than people without disabilities.' Often, a community-based residential facility provides the only means by which disabled persons can live in a residential neighborhood, either because they need more supportive services, for financial reasons, or both." *Oconomowoc,* 300 F.3d at 784. Failing to accommodate such a facility is a blatant violation of the FHAA. *Id.*

The Seventh Circuit found an unreasonable failure to accommodate the location of group homes in a residential area even where the zoning ordinance allowed them but required them to be 2,500 feet from one another. *See Oconomowoc,* 300 F.3d at 784. If the 2,500 foot requirement was not reasonable accommodation, a total ban in a single-family district would be even more problematic. As the Seventh Circuit explained in the *Oconomowoc* case: "In this context, 'equal opportunity' means the opportunity to choose to live in a residential neighborhood. The FHAA 'prohibits local governments from applying land use regulations in a manner that will ... give disabled people less opportunity to live in certain neighborhoods than people without disabilities.' Often, a community-based residential facility provides the only means by which disabled persons can live in a residential neighborhood, either because they need more supportive services, for financial reasons, or both. When a zoning authority refuses to reasonably accommodate these small group living facilities, it denies disabled persons an equal opportunity to live in the community of their choice." *Id.* (citations omitted).

This anti-discrimination rule also prevents claims that the use of a residence conflicts with restrictive covenants. *Advocacy Center for Persons with Disabilities, Inc. v. Woodlands Estates Association Inc.,* 192 F. Supp. 2d 1344 (M.D. Fla. 2002) ("In the instant case, the Court finds that Defendant did not reasonably accommodate Plaintiffs, in violation of the FHAA, when it failed to waive the enforcement of its deed restrictions contained in the Declarations. . . . The Court finds that Defendant is in violation of the Fair Housing Act, as amended in 1988, 42 U.S.C. § 3604(f) and Defendant is enjoined from attempting to enforce the deed restriction in question from operating."); *Martin v. Constance,* 843 F. Supp. 1321, 1326 (E.D. Mo. 1994) ("A reasonable accommodation would have been not to seek enforcement of the covenant. Such an accommodation would not impose an undue financial or administrative burden on the private defendants, nor would it undermine the basic purpose behind the practice of enforcement, namely, to maintain the residential nature of the neighborhood."); *U.S. v. Scott,* 788 F. Supp. 1555 (D. Kan. 1992).

We expect that the City will comply with the law and grant the variance to respect the rights of the disabled and hope that the City will not discriminate against the disabled in a manner prohibited by the FHAA. While it is not Pinnacle's preferred means of resolving this dispute, please be advised that Pinnacle reserves the right to vindicate the FHAA's requirements in court if the City fails to provide the reasonable accommodation discussed above. These rights including an award of actual and punitive damages against the City as well as its right to recover its attorneys' fees. 42 U.S.C.A. § 3613 ("In a civil action under subsection (a), if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to the plaintiff actual and punitive damages . . . ."); *id.* ("In a civil action under subsection (a), the

**BARNES & THORNBURG** LLP

August 27, 2020
Page 3

court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee and costs.").

Pinnacle also submits the enclosed PowerPoint presentation previously tendered that includes information about Pinnacle and its facilities.  It is enclosed as **Exhibit 1.**

Finally, Pinnacle makes this variance request in reliance on the City's representation that the submission of this variance request does not waive any of its rights to seek relief under the FHAA as demonstrated in the letter attached as **Exhibit 2.**

Sincerely,

Mark J. Crandley

**BARNES & THORNBURG** LLP

**Crandley, Mark**

| | |
|---|---|
| **From:** | Timothy.Ochs@icemiller.com |
| **Sent:** | Monday, August 31, 2020 4:25 PM |
| **To:** | Crandley, Mark; Jason.McNiel@icemiller.com |
| **Cc:** | alex@kutanovskilaw.com; Loftus, Joseph |
| **Subject:** | RE: [EXTERNAL] RE: Crown Point/Pinnacle |

Mark:  Thank you for the application.  Unfortunately, however, the application is not complete.  In addition to what you have filed, the City needs the following, which are required as part of every variance filed with the City:

1. A $100 application fee.  This can be paid in person by check (please make check payable to the City of Crown Point), or it can be paid over the phone with a credit card by calling the planning administrator, Anthony Schlueter.  Anthony's telephone number is 219-661-5039.
2. A site plan of the subject property needs to be included.  If no improvements are proposed, a survey or surveyor's location report of the property will suffice.  This can be e-mailed to Anthony or delivered in person.
3. Please provide photos of the property and the adjacent properties.  Please e-mail to Anthony at aschlueter@crownpoint.in.gov.

The BZA is calling a special meeting for 9/15 at 6pm.  Due to the anticipated interest in this matter and COVID-19, the regular meeting location will not work.  As a result, the hearing will be held at 183 S. West Street, which is an outdoor pavilion.  It will be done virtually as well as in person with appropriate social distancing measures put in place.   The additional information requested above must be submitted by 3:00pm CST tomorrow, 9/1, in order for Anthony to prepare the notices for mailing and publication.  The publication will have to be submitted by Wednesday, 9/2, in order to be published by September 4.   Please make sure that you communicate with Anthony to make sure that proper notice and publication occurs.

As I am sure you would agree, this matter must be handled in compliance with the City's standard requirements that apply to all variance applications.  The requests listed above will accomplish that.   If you cannot comply with the requests by tomorrow at 3:00pm, the City will be forced to take further action.  If you have any questions, please do not hesitate to contact myself or Jason McNiel.

Sincerely,

Tim



LEGAL COUNSEL
**Timothy Ochs**
Partner
Timothy.Ochs@icemiller.com
**p** 317-236-5952 **f** 317-592-4720
**c** 317-695-8386

Ice Miller LLP
One American Square
Suite 2900

**EXHIBIT G**

1

Indianapolis, IN 46282-0200

····································································

To learn more about the firm and its services, visit us at
**icemiller.com**

····································································

---

**From: Crandley, Mark** [mailto:Mark.Crandley@btlaw.com]
**Sent:** Friday, August 28, 2020 4:35 PM
**To:** McNiel, Jason; Ochs, Timothy
**Cc:** alex@kutanovskilaw.com; Loftus, Joseph
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

**EXTERNAL EMAIL WARNING!** Use caution with links, attachments, or responses. DO NOT provide your credentials!

---

Jason and Timothy:
Enclosed pleased find my clients request for reasonable accommodation in the form of the variance request and accompanying attachments. It is my understanding that the City has or will compile the certified list of adjoining property owners and provide notice by certified mail.  My client will post the legal notice.  Can you confirm the date of the currently planned hearing for this application?

**Mark Crandley** | Partner
Barnes & Thornburg LLP
11 South Meridian Street, Indianapolis, IN 46204-3535
Direct: (317) 261-7924 | Mobile: (317) 258-4060 | Fax: (317) 231-7433



Atlanta | California | Chicago | Delaware | Indiana | Michigan | Minneapolis
Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

---

**From:** Crandley, Mark
**Sent:** Thursday, August 20, 2020 4:18 PM
**To:** 'Jason.McNiel@icemiller.com' <Jason.McNiel@icemiller.com>
**Cc:** Timothy.Ochs@icemiller.com; alex@kutanovskilaw.com
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

Good afternoon Jason. I am following back up with you regarding the Crown Point issues.  The request to expedite this process has caused serious concern on our side which has taken some time to work through. The sense is that the City is taking extraordinary measures to rush through the process as quickly as possible because of public sentiment, which in turn makes it appear that the process is set up to deny the variance and prejudice my client.

After a lot of discussion, my client decided it would be willing to continue with preparing a variance request but for the September planned meeting as we have always intended.  Of course, we would still need a signed stipulation including the language we previously tendered. Will the City also agree that it will not begin enforcement pending litigation in the event the variance is denied?

A few other concerns.  Will there be any submission to the board regarding the FHAA? For instance, will your firm be preparing a memorandum stating that the variance must be provided under the FHAA?  It's hard to see how non-lawyer board members would be expected to understand the issues without some guidance other than our submission.

I've also asked twice now if you could provide the authority you indicated that you have regarding variances, waiver and the FHAA. Please provided that authority.

Sincerely,

**Mark Crandley** | Partner
Barnes & Thornburg LLP
11 South Meridian Street, Indianapolis, IN 46204-3535
Direct: (317) 261-7924 | Mobile: (317) 258-4060 | Fax: (317) 231-7433



Atlanta | California | Chicago | Delaware | Indiana | Michigan | Minneapolis
Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

---

**From:** Jason.McNiel@icemiller.com <Jason.McNiel@icemiller.com>
**Sent:** Thursday, August 20, 2020 11:50 AM
**To:** Crandley, Mark <Mark.Crandley@btlaw.com>
**Cc:** Timothy.Ochs@icemiller.com; alex@kutanovskilaw.com
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

Mark- Following up on this.  Have you had a chance to talk to your client?

---

**From:** McNiel, Jason
**Sent:** Tuesday, August 18, 2020 2:40 PM
**To:** 'Crandley, Mark'
**Cc:** Ochs, Timothy; 'alex@kutanovskilaw.com'
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

Mark- The City would like to reschedule the 8/24 BZA hearing to 9/8 to allow your client time to file the petition and send out any required notices.  The filing deadline for the petition would be 8/24 so that publication can occur by 8/28 for the 9/8 meeting.  Planning Department would create the notice for publication and prepare the certified mailings by 8/26.  All that the petitioner would need to do is place postage, mail the documents and publish notice on 8/28.  Can you please confirm as soon as possible that this would work for your client?

Thanks,

Jason



**Jason McNiel**
Partner
Jason.McNiel@icemiller.com
**p** 317-236-2300 **f** 317-592-4267
**c** 317-258-2946

Ice Miller LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200

To learn more about the firm and its services, visit us at
**icemiller.com**

**From:** Crandley, Mark [mailto:Mark.Crandley@btlaw.com]
**Sent:** Tuesday, August 18, 2020 11:04 AM
**To:** McNiel, Jason
**Cc:** Ochs, Timothy
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

**EXTERNAL EMAIL WARNING!** Use caution with links, attachments, or responses. DO Not provide your credentials!

It does not. We do not want to be in a position where there are procedural arguments to make. Plus we have the concerns regarding our key person being able to attend. We'd much prefer to go forward too, but not if it prejudices us.

**From:** Jason.McNiel@icemiller.com <Jason.McNiel@icemiller.com>
**Sent:** Tuesday, August 18, 2020 11:02 AM
**To:** Crandley, Mark <Mark.Crandley@btlaw.com>
**Cc:** Timothy.Ochs@icemiller.com
**Subject:** RE: [EXTERNAL] RE: Crown Point/Pinnacle

Mark- As long as the state statute is followed the BZA has the ability to waive the procedural rules by a vote at the hearing.  Does this ease the concern?  We would really like to get this heard next week if possible.

Jason



**Jason McNiel**
Partner
Jason.McNiel@icemiller.com
**p** 317-236-2300 **f** 317-592-4267
**c** 317-258-2946
............................................................................................................

Ice Miller LLP
One American Square
Suite 2900
Indianapolis, IN 46282-0200
............................................................................................................

To learn more about the firm and its services, visit us at
**icemiller.com**
............................................................................................................

**From:** Crandley, Mark [mailto:Mark.Crandley@btlaw.com]
**Sent:** Tuesday, August 18, 2020 10:32 AM
**To:** McNiel, Jason
**Subject:** [EXTERNAL] RE: Crown Point/Pinnacle

**EXTERNAL EMAIL WARNING!** Use caution with links, attachments, or responses. DO Not provide your credentials!

Jason:
My client has determined that it will not be able to submit a variance request for the August 24 meeting. There are two reasons for this. The first is that a key client representative has a conflict we just learned about. The second stems from the variance application, which requires several procedural steps we cannot complete in the expedited time frame, including a certified list of all affected property owners and certified mail notice to the same. We're concerned that if these aren't met, we will be creating a procedural issue going forward. Given this expedited timeframe, we simply cannot complete those between now and Monday.  We are happy to submit the material for the September meeting.\
Best,

**Mark Crandley** | Partner
Barnes & Thornburg LLP
11 South Meridian Street, Indianapolis, IN 46204-3535
Direct: (317) 261-7924 | Mobile: (317) 258-4060 | Fax: (317) 231-7433



Atlanta | California | Chicago | Delaware | Indiana | Michigan | Minneapolis
Ohio | Raleigh | Salt Lake City | Texas | Washington, D.C.

CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.

CONFIDENTIALITY NOTICE: This email and any attachments are
for the exclusive and confidential use of the intended recipient. If
you are not the intended recipient, please do not read, distribute
or take action in reliance upon this message. If you have received
this in error, please notify us immediately by return email and
promptly delete this message and its attachments from your
computer system. We do not waive attorney-client or work product
privilege by the transmission of this message.